**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ARNOLD JEFFREY SAYLES  )
      Petitioner,  )  Civil No. 12-1644
    v.      )  Criminal No. 09-273
          )
UNITED STATES OF AMERICA  )
      Respondent.  )

## MEMORANDUM OPINION

CONTI, District Judge

  Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (the "Motion") (ECF No. 617)[1] filed by petitioner Arnold Jeffrey Sayles ("petitioner" or "Sayles"). After reviewing the Motion, the brief in opposition filed by the United States of America (the "government") (ECF No. 656), and petitioner's reply to the government's brief (ECF No. 670), the court will deny the Motion because, among other reasons, petitioner waived his right to file the motion and, even if he had not done so, it is time barred.

**I. Background**

  On September 15, 2009, a federal grand jury in the Western District of Pennsylvania returned a one-count indictment against petitioner and others alleging violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. (ECF No. 1.) On December 8, 2009, a federal grand jury in the Western District of Pennsylvania returned a five-count superseding indictment against petitioner and others. (ECF No. 145.) Petitioner was charged in count one of the superseding indictment with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Id.) Petitioner was also charged in count

---

[1] ECF No. references are to filings in Criminal No. 09-273.

two of the superseding indictment with possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). (ECF No. 145.) On May 17, 2009, petitioner entered a plea of guilty to count one of the superseding indictment for conspiracy to distribute five kilograms or more of cocaine. (ECF No. 412.) On September 27, 2009, this court sentenced petitioner to a term of imprisonment of 120 months to be followed by a term of supervised release of five years. (ECF Nos. 518-19.)

Petitioner waived his right to take an appeal except in limited circumstances: (1) if the government filed an appeal, (2) if the court imposed a sentence that exceeded the statutory maximums, or (3) if petitioner's sentence unreasonably exceeded the guideline range. (ECF No. 656-2 at 5.) Petitioner also waived his right to file a motion to vacate his sentence pursuant to § 2255. (Id. at 4-5.) The court found petitioner competent to plead guilty and accepted the plea agreement. (ECF No. 656-1 at 5, 19-20.) The court entered judgment in this case on September 29, 2011. (ECF No. 519.)

On November 8, 2012, the clerk of court received and filed petitioner's Motion pursuant to § 2255. (ECF No. 617.) Petitioner lists three grounds in support of his Motion. (ECF No. 618.) Petitioner argues that: (1) his attorney failed to reject the plea agreement and take the case to trial, (2) his attorney failed to raise a motion to suppress evidence, and (3) this court abused its discretion in sentencing petitioner to a term of imprisonment that exceeds the range set forth in the United States Sentencing Guidelines. (Id.)

The government filed its response in opposition to petitioner's motion on March 1, 2013. (ECF No. 656.) In its response, the government argues that the motion should be dismissed because: (1) the statute of limitations ran before petitioner filed his motion, (2) petitioner knowingly waived his rights to file such a motion, (3) petitioner's counsel was not ineffective,

and (4) the court did not abuse its discretion in imposing the term of imprisonment  (Id.)

Petitioner filed a reply on May 25, 2013.  (ECF No. 670.)

## II. Standard of Review

Under § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. §2255.  The Supreme Court interpreted the statute as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

Hill v. United States, 368 U.S. 424, 426-27 (1967) (quoting 28 U.S.C. § 2255).

The statute provides, as a remedy for a sentence imposed in violation of the law, that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255.  Petitioner in the present case asserts that his counsel was ineffective, which implicates the first ground for relief under § 2255.

A district court is required to hold an evidentiary hearing on a motion filed pursuant to § 2255, unless the motion and records of the case show conclusively that the movant is not entitled to relief.  28 U.S.C. § 2255 ("Unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt

hearing hereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); <u>United States v. Booth</u>, 432 F.3d 542, 545-546 (3d Cir. 2005).

## III. Timeliness of Petitioner's § 2255 Motion

Petitioner's § 2255 motion does not meet the statute of limitations requirement set forth in 28 U.S.C § 2255(f), and therefore must be denied.  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-66, there is a one-year statute of limitations applicable to a §2255 motion.  28 U.S.C. § 2255(f); <u>Lloyd v. United States</u>, 407 F.3d 608, 611 (3d Cir. 2005).  The statute of limitations period runs from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence

28 U.S.C. § 2255(f).[2]

### a. Final Conviction—§ 2255(f)(1)

In this case, petitioner did not appeal his criminal conviction.  (ECF No. 617.)  For purposes of § 2255(f)(1), a petitioner's conviction becomes final, and the statute of limitations begins to run when the time for filing a notice of appeal  expires and no appeal is filed within

---

[2] In 2008, Congress added letter and number designations to the paragraphs and subparagraphs of 28 U.S.C. § 2255.  Court Security Improvement Act of 2007, Pub. L. No. 110-177, § 511, 121 Stat. 2534, 2545 (2008).

that period.  See United States v. Kapral, 166 F.3d 565, 577 (3d Cir. 1999).  Defendants

convicted in a criminal case have fourteen days to file a notice of appeal.  See Federal Rules of

Appellate Procedure 4(b)(1)(A).  In the present case, petitioner's judgment was entered on the

criminal docket on September 29, 2011.  (ECF No. 519.)  Petitioner did not file an appeal within

fourteen days and his conviction therefore became final on October 13, 2011.  Petitioner did not

file his Motion until November 8, 2012.  (ECF No. 617.)  As a result, petitioner's Motion was

untimely pursuant to 28 U.S.C. § 2255(f)(1), because it was filed after October 13, 2012, i.e.,

more than one year after petitioner's conviction became final.

### b. Government Impediment—§ 2255(f)(2)

Petitioner does not allege, and the court cannot discern, facts warranting the application

of 28 U.S.C. § 2255(f)(2) to petitioner's case. The gravamen of petitioner's § 2255 motion is that

his counsel failed to investigate adequately the facts with respect to the government's charges

against him before advising him to accept the government's plea offer. (ECF No. 618.)

Petitioner challenges his counsel's effectiveness during the plea bargaining stage. (Id.)

Specifically, petitioner claims that his counsel was ineffective by failing to reject the plea

agreement and proceed to trial, (ECF No. 618), and claims that his counsel failed to file motions

to suppress evidence. (Id. at 14.)  The record, however, is devoid of evidence that "governmental

action" created an "impediment" that "prevented" petitioner from filing his § 2255 motion within

one-year of his conviction as required by § 2255(f)(1). Under those circumstances, § 2255(f)(2)

is inapplicable to petitioner's case.

### c. Assertion of a Right Newly Recognized by the Supreme Court—§ 2255(f)(3)

The only other avenue for petitioner's Motion to be timely filed is pursuant to §

2255(f)(3).  § 2255(f)(3) provides that the one-year statute of limitations may begin on:

. . .the date on which the right asserted was initially recognized by the Supreme Court, *if* that right has been [1] newly recognized by the Supreme Court *and* [2] made retroactively applicable to cases on collateral review.

28 U.S.C. § 2255(f)(3) (emphasis added).  Petitioner argues that two recent Supreme Court decisions recognize the right that he is currently asserting, thus extending the statute of limitations for his § 2255 motion.  (ECF No. 618.)  Petitioner asserts that his Sixth Amendment rights were violated as a result of ineffective assistance of counsel.  (ECF No. 618 at 17.)

First, petitioner claims that <u>Missouri v. Frye</u>, 132 S.Ct. 1399 (2012), initially recognized the right he is currently asserting. (ECF No. 618 at 2.)  <u>Frye</u> concerned the right to effective assistance of counsel with respect to communicating formal plea offers to a criminal defendant. <u>Id.</u> at 1408.  The court in <u>Frye</u> held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  <u>Id.</u> The rule established in <u>Frye</u> was an application of standards developed in two earlier cases, specifically <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985) (holding that the <u>Strickland v. Washington</u> test applies to guilty plea challenges based on ineffective assistance of counsel), and <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) (holding that to establish ineffectiveness of counsel in violation of the Sixth Amendment, petitioner must prove deficient representation and prejudice).  <u>Frye</u>, 132 S.Ct. at 1409.  In <u>Frye</u>, the court stated that <u>Hill</u> and <u>Strickland</u> governed the claims of ineffective assistance of counsel in the plea bargaining process.  <u>Frye</u>, 132 S.Ct. at 1405.  <u>Frye</u> did not, therefore, recognize a new right that petitioner could use to claim that the § 2255(f) statute of limitations was extended.

Second, petitioner argues that <u>Lafler v. Cooper</u>, 132 S.Ct. 1376 (2012), initially recognized the right that he is currently asserting.  (ECF No. 618 at 2.)  In <u>Lafler</u>, the defendant claimed that his counsel was ineffective because counsel advised him to reject a plea deal, and

go to trial.  Id. at 1383.  The defendant was subsequently convicted at trial and sentenced to a longer term of imprisonment than was offered in the plea agreement.  Id.  The court in Lafler stated that it applied the Strickland test to the case at hand and did not recognize a new right.  Id. at 1385.  Therefore, Lafler did not initially recognize the right that the petitioner is currently asserting.  Likewise, petitioner cannot rely upon Lafler to claim that the § 2255(f) statute of limitations was extended.

Although the Court of Appeals for the Third Circuit has yet to address the issue whether Lafler and Frye recognized a new right, other courts of appeals and this court have held that neither case (1) created new rights that are (2) retroactively applicable to cases on collateral review. See e.g. Williams v. United States, 705 F.3d 293, 294 (8th Cir. 2013) (holding that neither Frye nor Lafler announced a new rule of constitutional law); In re King, 697 F.3d 1189, 1189 (5th Cir. 2012) (holding that the Fifth Circuit Court of Appeals will follow the Court of Appeals for the Eleventh Circuit's holding concerning whether Frye and Lafler recognized a new right); Buenrostro v. United States, 697 F.3d 1137, 1140 (9th Cir. 2012) (holding that the Supreme Court did not announce a new rule in Frye and Lafler); United States v. Lawton, No. 12-3240, 2012 WL 6604576, at *3 (10th Cir. 2012) (holding that neither Frye nor Lafler recognized a new right); In re Perez, 682 F.3d 930, 933 (11th Cir. 2012) (holding that the decisions in Frye and Lafler were not new rules of constitutional law);  United States v. Denson, No. 08-CR-00365, 2013 WL 588509, at *1 (W.D. PA Feb. 11, 2013) (holding that Frye and Lafler did not create new rights but "merely appl[ied] existing standards to different factual situations").  In Buenrostro, the court stated that in both Frye and Lafler, the Supreme Court "merely applied the Sixth Amendment right to effective assistance of counsel according to the

test articulated in <u>Strickland</u> . . . ." Therefore, "neither case decided a new rule of constitutional law." <u>Buenrostro</u>, 697 F.3d at 1140.

This court held in <u>Denison</u> that a § 2255 claim based upon ineffective assistance of counsel during the plea bargaining process was a right that was initially recognized by decisions decided before <u>Frye</u> and <u>Lafler</u>.  <u>See Denson</u>, 2013 WL 588509, at *2.  Specifically, the court in <u>Denson</u> acknowledged that effective assistance of counsel during the plea bargaining process is governed by <u>Hill</u>, 474 U.S. 52, and <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473 (2010).  <u>Id.</u>

In <u>Hill</u>, the Court recognized a right to effective assistance of counsel in the plea bargaining process by holding that ineffective assistance of counsel claims are governed by the <u>Strickland</u> two-part test.  <u>Id.</u> at 58; <u>see Frye</u>, 132 S. Ct. at 1405 (recognizing <u>Hill</u> "established" that <u>Strickland</u> applies to ineffectiveness claims in the plea bargaining context). The Court in <u>Hill</u> stated that the first part of the <u>Strickland</u> test is determined by the competency of the attorney, while the second part focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  <u>Hill</u>, 474 U.S. at 58-59.  <u>Hill</u> expanded <u>Strickland</u> to include the plea bargaining process.

In <u>Padilla</u>, the Court held that <u>Strickland</u> and the Sixth Amendment apply to claims concerning effectiveness of counsel in the plea bargaining process when the defendant faces potential deportation as a result of the plea.  <u>Padilla</u>, 130 S.Ct. at 1482.   By holding that such claims are determined by <u>Strickland</u>, the <u>Padilla</u> Court recognized a new rule, with respect to counsel's advice in the plea bargaining process about particular kinds of penalties.  <u>Chaidez v. United States</u>, 133 S.Ct. 1103, 1112 (2013 ("This Court announced a new rule in <u>Padilla</u>.  Under <u>Teague</u>[v. Lane, 489 U.S. 288 (1989)], defendants whose convictions become final prior to <u>Padilla</u> therefore cannot benefit from its holding.")

Frye and Lafler did not recognize a new right, and instead are applications of the existing

Sixth Amendment right to effective assistance of counsel, as recognized by Strickland and Hill.

Because the Court's decisions in Frye and Lafler were dictated by rights previously established

by Strickland, those decisions did not create "newly recognized rights" for purposes of §

2255(f)(3). See Perez, 682 F.3d at 933 (quoting Teague v. Lane, 489 U.S. 288, 301 (1989)

(plurality opinion) (requiring the "[breaking of] new ground or [the imposition of] a new

obligation on state or federal government" for the creation of a new right). Because Frye and

Lafler are applications of an existing right to effective counsel in the plea bargaining process, the

Supreme Court (1) did not recognize new rights that are (2) retroactively applicable to cases on

collateral review. See Frye, 132 S. Ct. at 1409; Lafler, 132 S. Ct. at 1384. Therefore, neither

Frye nor Lafler extend petitioner's statute of limitations period pursuant to § 2255(f)(3).

In the current case, in order for petitioner's claim to meet the statute of limitations

requirements set forth in § 2255(f), the claim must have been filed within one year of when the

right to effective assistance of counsel during plea bargaining was initially recognized by the

Supreme Court. 28 U.S.C. § 2255(f)(3). The Supreme Court initially recognized that right in

1985 in Hill and in 2010 in Padilla. See Hill, 474 U.S. 52; Padilla, 130 S.Ct. 1473. Petitioner

filed his § 2255 claim on November 8, 2012 (ECF No. 617), and both Hill and Padilla were

decided more than one year before petitioner filed his Motion. Therefore, petitioner does not

meet the statute of limitations requirements set forth in § 2255(f) and his motion must be denied.

Even assuming, arguendo, that Frye and Lafler did create new, retroactive rights,

petitioner has asserted a right that is distinguishable from the rights recognized in Frye and

Lafler. In Frye, the Supreme Court's discussion involved an "application of [the right to

effective counsel as defined by] Strickland to the instances of an uncommunicated, lapsed plea."

<u>Frye</u>, 132 S.Ct. at 1409. Unlike <u>Frye</u>, petitioner was offered, and accepted a plea agreement. (ECF No. 661 at 3.) Petitioner makes no allegation that his counsel failed to communicate a plea agreement, or that his counsel's actions caused a plea agreement to lapse. (ECF No. 618.) In <u>Lafler</u>, the Supreme Court's discussion involved "how to apply <u>Strickland</u>'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." <u>Lafler</u>, 132 S.Ct. at 1384. Petitioner, however, makes no allegations that a more favorable plea agreement was offered by the government, but his counsel advised him to reject it. (ECF No. 618.) Petitioner's counsel apprised him of the government's plea agreement before it expired, and at the change of plea hearing, petitioner acknowledged that he wished to accept the plea agreement. (ECF No. 656-1 at 10.) Petitioner also confirmed that he had ample time to discuss his case with his attorney. (<u>Id.</u> at 6.) These circumstances do not align with the circumstances that justified the Court's application of <u>Strickland</u> in <u>Frye</u> and <u>Lafler</u>. Neither case, therefore, warrants the application of § 2255(f)(3) to petitioner's claim for relief.

### d. Newly Discovered Evidence—§ 2255(f)(4)

The record does not establish that newly discovered evidence warrants the application of § 2255(f)(4) to petitioner's claim for relief. With respect to newly discovered evidence, the one-year statute of limitations begins to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Petitioner's assertions indicate that he was aware of the facts underlying his ineffective assistance of counsel claim before November 8, 2011. (ECF No. 618) Petitioner argues that his counsel was deficient during the entire plea bargaining process, and this deficiency was "evident." (<u>Id.</u> at 3.) Petitioner also asserts that his counsel was ineffective because he failed to "file a motion to suppress" evidence and never "gave any explanation" for

failing to file such a motion. (Id. at 9.) Neither petitioner's assertions nor the record, however, establish the unearthing of any new facts warranting the application of § 2255(f)(4) to petitioner's claim for relief. The statute of limitations began to run with respect to petitioner's motion on October 13, 2011—the date on which the judgment became final in this case. The statute of limitations lapsed one year later on October 13, 2012. Petitioner's § 2255 motion must, therefore, be dismissed because it is time-barred, unless equitable tolling is available.

## IV. Equitable Tolling

In certain circumstances, the AEDPA's statute of limitations is subject to equitable tolling. See Holland v. Florida, 130 S. Ct. 2549, 2560 (2010); McAleese v. Brennan, 483 F.3d 206, 219 (3d Cir. 2007); Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 619 n.1 (3d Cir. 1998) (holding the one-year statute of limitations set forth in § 2255(f) is subject to equitable tolling). Equitable tolling applies where a movant demonstrates that: "(1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 130 S. Ct. at 2562. Equitable tolling is not available where the late filing is due to a movant's excusable neglect. Schlueter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004); Miller, 145 F.3d at 618-19. Consistent with these principles, the Third Circuit Court of Appeals has specifically limited equitable tolling of § 2255's limitations period to the following circumstances:

(1) where the defendant actively misled the plaintiff;

(2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

Here, petitioner has not demonstrated extraordinary circumstances that prevented him

from filing a timely petition. As the Court of Appeals for the Third Circuit noted in McAleese:

> While we exercise some level of leniency with respect to [pro se] petitioners…
> mere neglect, even if characterized as excusable, does not justify equitable tolling
> in any circumstances.

McAleese, 483 F.3d at 219. Petitioner asserts that his counsel was deficient, but he has not carried his burden of showing that he diligently pursued his rights under § 2255 and that some extraordinary circumstance impeded him from filing within the one-year statute of limitations set forth in § 2255(f)(1).

In Holland, the United States Supreme Court set forth the applicable standard with respect to what is generally required to demonstrate an "extraordinary circumstance." Holland, 130 S. Ct at 2549. In that case, a state-appointed defense attorney failed to file a timely habeas petition on behalf of a criminal defendant on death row after numerous letters and communications admonishing him to do so. Id. at 2560. The Court commented:

> We have previously held that 'a garden variety claim of excusable neglect' such
> as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not
> warrant equitable tolling. But the case before us does not involve, and we are not
> considering, a 'garden variety claim' of attorney negligence. Rather, the facts of
> this case present far more serious instances of attorney misconduct.
> …
> A group of teachers of legal ethics tells us that these various failures violated
> fundamental canons of professional responsibility, which require attorneys to
> perform reasonably competent legal work, to communicate with their clients, to
> implement clients' reasonable requests, to keep their clients informed of key
> developments in their cases, and never to abandon a client. And in this case, the
> failures seriously prejudiced a client who thereby lost what was likely his single
> opportunity for federal habeas review of the lawfulness of his imprisonment and
> of his death sentence…[Thus,] [t]he record facts…suggest that this case may well
> be an 'extraordinary' instance in which petitioner's attorney's conduct constituted
> far more than 'garden variety' or 'excusable neglect.'

Id. at 2564-65. Here, the record does not establish *any* impediment to petitioner's ability to timely file his § 2255 motion, let alone an impediment rising to the "extraordinary circumstances" in Holland. The record does not indicate that petitioner diligently sought out his

rights under § 2255 or that any impediment precluded him from filing his motion within the one-year statute of limitations set forth in § 2255(f)(1). In those circumstances, equitable tolling is not available. As discussed <u>supra</u>, petitioner's § 2255 motion is time-barred pursuant to § 2255(f)(1).

## V. Petitioner's Waiver of Right to Collateral Review

Petitioner's claim is also barred because he knowingly and voluntarily waived his right to collateral review. Criminal defendants may waive the right to a collateral review of a sentence during the course of a plea agreement and guilty plea. <u>See</u> <u>United States v. Mezzanatto</u>, 513 U.S. 196, 201 (1995) (holding that a criminal defendant may "knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution"). A waiver of rights is enforceable "provided that [it is] entered into knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." <u>United States v. Mabry</u>, 536 F.3d 231, 237 (3d Cir. 2008). Although "a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice." <u>Id.</u> at 237-38. In order to determine whether the waiver of a defendant's rights was entered into knowingly and voluntarily, the court must review the change-of-plea colloquy to ensure that the "court 'inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence' as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." <u>Id.</u> at 239. Reviewing courts use a "common sense approach" when looking at the underlying facts "in determining whether a miscarriage of justice would occur if the waiver were enforced."

Id. at 242.  This common-sense approach employs a two-prong test, asking: (1) was the waiver

"knowing and voluntary;" and (2) did it "work a miscarriage of justice"?  Id. at 244.

To determine whether enforcing a waiver would be a miscarriage of justice, the Court of

Appeals for the Third Circuit

> endorsed the methodology of the Court of Appeals for the First
> Circuit, which suggested "the clarity of the error, its gravity, its
> character (e.g., whether it concerns a fact issue, a sentencing
> guideline, or a statutory maximum), the impact of the error on the
> defendant, the impact of correcting the error on the government,
> and the extent to which the defendant acquiesced in the result" as
> factors to consider before invalidating a waiver as involving a
> "miscarriage of justice."  United States v. Teeter, 257 F.3d 14, 25-
> 26 (1st Cir. 2001).  At the same time, we have declined to identify
> a list of specific circumstances which would give rise to, or
> constitute, a miscarriage of justice.

Id. at 242-43.

Courts "strictly construe" a waiver of the right to collateral review.  United States v.

Khattak, 273 F.3d 557, 562 (3d Cir. 2001).  Additionally, "the language of a waiver, like the

language of a contract, matters greatly" to the court's analysis.  United States v. Goodson, 544

F.3d 529, 535 (3rd Cir. 2008).  The language contained in the plea agreement alone, however,

may not be sufficient to ensure that petitioner knowingly and voluntarily waived his right to

collateral review.  See United States v. Corso, 549 F.3d 921, 930 (3rd Cir. 2008) ("'The point of

Rule 11(b)(1)(N) is that a signed piece of paper is not enough,' and that district courts are

charged with reviewing a plea agreement extensively with the defendant to ensure sufficient

understanding of the consequences.") (quoting United States v. Sura, 511 F.3d 654, 662 (7th Cir.

2007))).

Petitioner fails to establish that this court should not enforce the waiver of his right to

collateral review.  The plea agreement stated: "Arnold Jeffrey Sayles further waives the right to

file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." (ECF No. 661 at 3.) During the change of plea hearing held on May 17, 2011, petitioner acknowledged that he was able to speak and understand English. (ECF No. 656-1 at 4.) He indicated to the court that he graduated high school, earned an associate's degree, and was not under the influence of any drugs or alcoholic beverages at the time of the hearing. (Id.) Petitioner acknowledged that he understood what was happening, (Id. at 5) and that he had ample time to discuss his case with his attorney. (Id. at 6.) Petitioner acknowledged that he understood the maximum and minimum penalties of the offense. (Id. at 13-14.) Based upon these representations, the court determined that petitioner was competent to plead, (Id. at 5) and that the petitioner was not coerced or persuaded into accepting the plea agreement. (ECF No. 656-2 at 14.) The court reviewed the terms of the plea agreement with petitioner, asking:

> THE COURT:        Have you entered into a plea agreement with the government, often in the form of a letter?
>
> THE DEFENDANT: Yes.
>
> THE COURT:        Did you have an opportunity to read and discuss each of the provisions of the plea agreement with your lawyer before you singed it?
>
> THE DEFENDANT: Yes, ma'am.

(Id. at 2.)

Counsel for the government read the terms of the plea agreement to petitioner and the court. (ECF No. 656-2 at 2-4.) The court specifically reviewed the paragraph of the plea agreement concerning the waiver of right to a collateral attack with petitioner:

> THE COURT:        You understand that by entering into the plea agreement you are giving up and limiting in very significant ways your

ability to take an appeal or attack your conviction or
sentence?

THE DEFENDANT:  Yes, ma'am.

THE COURT:          Do you understand that there's only going to be three
situations in which you can take an appeal?

THE DEFENDANT: Yes, ma'am.

THE COURT:          You understand that the first situation is if the government
were to appeal, then you could appeal.

THE DEFENDANT: Okay.

THE COURT:          You understand there's no limit on the government's ability
to appeal?

THE DEFENDANT: Okay.

THE COURT:          You understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT:          The second situation is, if the Court were to impose a
sentence that exceeds statutory maximums?  Remember,
just a few minutes ago, I went over with you what the
statutory maximums were for this offense?

THE DEFENDANT: Yes, ma'am.

THE COURT:          For pleading guilty?  You remember that?

THE DEFENDANT: Yes, ma'am.

THE COURT:          So, if the court were to impose a sentence that were greater
than those maximums, you could file an appeal.  You
understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT:          And the third and final situation in which you could take an
appeal is, after the Court determines what your Guideline
sentence would be, the sentence imposed would
unreasonably exceed that Guideline range.

THE DEFENDANT: Okay.  Yes, ma'am.

THE COURT:         That's the final situation.  You understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT:         So, you understand, if you do not fall within one of those three situations, you, under the plea agreement, are not able to take an appeal?

THE DEFENDANT: Yes, ma'am.  I do.

THE COURT:         **And you're also totally, completely, giving up your right to come back at some later time to try to attack your conviction or sentence.  You understand that?**

THE DEFENDANT: **I understand.**

THE COURT:         So, do you understand, now that if you don't fall within one of these three situations we just reviewed, that the sentence that the Court imposes will be final?  It can't be attacked.

THE DEFENDANT: Yes, ma'am.

THE COURT:         Are you willing to give up those rights for the benefit of the plea agreement?

THE DEFENDANT: I am.

THE COURT:  Okay.

(Id. at 4-6) (emphasis added).

Upon review of the plea agreement and change of plea colloquy, the court concludes that petitioner knowingly and voluntarily agreed to the waiver.  Ordinarily, the law "considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it."  United States v. Ruiz, 536 U.S. 622, 629 (2002).  In this case, the court thoroughly explained the nature of the plea agreement and the rights that petitioner gave up for the benefit of the plea agreement.  (ECF

No. 656-2 at 2-6.)  The court specifically informed petitioner, and he acknowledged, that he was "totally, completely, giving up [his] right to come back at some later time to try to attack [his] conviction or sentence."  (ECF No. 656-2 at 5-6.)  Petitioner acknowledged that he read, understood, and reviewed with his attorney the plea agreement and the rights he was waiving. (Id. at 2-6; ECF No. 656-1 at 4.)  Due to petitioner's competence to enter a guilty plea, his understanding of the plea agreement, and his willingness to accept it, petitioner entered into the plea agreement knowingly and voluntarily, and fails to satisfy the first prong of the test for evaluating a waiver of rights. See Mabry, 536 F.3d at 244.

Petitioner likewise provides no factual basis for the court to conclude that enforcing the plea agreement and waiver would constitute a miscarriage of justice.  Section 2255 motions are "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  United States v. Gordon, 979 F. Supp. 337, 339 (E.D. PA 1997).  In this case, no exceptional circumstance exists.  Petitioner acknowledged his guilt under oath (ECF No. 656-1 at 16) and knowingly and voluntarily waived his right to collateral attack.  (See ECF No. 656-1; ECF No. 656-2.)  Petitioner's attempts to second guess his decision to plea guilty is not a valid basis for a § 2255 motion.  Nothing in the plea colloquy indicates that petitioner did not understand the charges against him or the rights he was giving up.  Therefore, a miscarriage of justice did not result and the petitioner does not meet the second prong of the test for evaluating a waiver of rights.  See Mabry, 536 F.3d at 244.  Since the petitioner did not meet the two-prong test set forth in Mabry, the waiver of rights contained in the plea agreement will be enforced and the petitioner's § 2255 motion must be denied.

## VI. Ineffective Assistance of Counsel[3]

Although petitioner's § 2255 motion is untimely and he waived his rights to file such a motion, the motion would fail even if the court considered the arguments on the merits. To establish ineffective assistance of counsel in violation of the Sixth Amendment, petitioner must prove: (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland, 466 U.S. 668. The Court of Appeals for the Third Circuit has recognized that courts can address the prejudice prong of the Strickland analysis first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir.), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant. . . .") (internal quotations and citations omitted). The two-part analysis set forth in Strickland, applies to alleged ineffective assistance during the plea bargaining process. See Hill, 474 U.S. at 57-59. Under Hill, the first part of the Strickland analysis remains the same, while the second part of the analysis focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 58-59.

### A. Prejudice

With respect to the prejudice prong, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. See Williams, 529 U.S. at 390-91. Petitioner must,

---

[3] Sayles acknowledged that "there is only one question to be legally answered in this § 2255 [Motion]. Did Patrick Nightingale do his job in the best interest of his 'assignment' as required by the Constitution." (ECF No. 618 at 6.) Therefore, petitioner's claims of innocence, not understanding the plea agreement, etc., all of which were flatly contradicted by the record in this case, are waived pursuant to procedural default. Bousley v. United States, 523 U.S. 614, 621-22 (1998).

however, go beyond proving that counsel's unprofessional errors had "some conceivable effect on the outcome of the proceeding." <u>Strickland</u>, 466 U.S. at 693. Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 694.

Petitioner provides no factual basis to support a claim that counsel's alleged errors caused a different outcome. Petitioner claims that his counsel was ineffective by failing to reject the plea agreement and proceed to trial despite the "basketful of circumstantial evidence offered by the government." (ECF No. 618.) Specifically, petitioner claims that his counsel failed to file motions to suppress evidence. (<u>Id.</u> at 14.) At the change of plea hearing, however, petitioner acknowledged that he still wished to waive his right to a trial by jury and plead guilty after discussing his rights with the court. (ECF No. 656-1 at 10.) Petitioner confirmed that he had ample time to discuss his case with his attorney. (<u>Id.</u> at 6.) After discussions with the court and his attorney about his rights, and the potential penalties, petitioner still acknowledged his guilt and admitted to committing the crime. (<u>Id.</u> at 16.) Moreover, petitioner fails to make any concrete arguments about how his counsel's failure to move to suppress evidence would have had more than a "conceivable effect on the outcome of the proceeding." <u>Strickland</u>, 466 U.S. at 693. Petitioner asserts in conclusory terms that illegal wiretaps were placed on his phone, illegal search warrants were issued, and his car was never searched in his presence. (ECF No. 618 at 13-14.) Petitioner, however, gives no support about why the evidence obtained by the government should have been suppressed by his counsel. Petitioner simply relies upon the conclusory allegations. (<u>Id.</u> at 14.) Petitioner, at the change of plea hearing, agreed with the government's proffered evidence that petitioner was obtaining cocaine and distributing it in the Mon Valley area of the Western District of Pennsylvania, including thirteen kilos of powdered

cocaine seized from the car petitioner was driving. (ECF 656-1 at 18.) The Federal Bureau of Investigation also had a wiretap on several phones used by Sayles. (ECF No. 656 at 2.) This evidence, which petitioner admitted to, stands in stark contrast to the bare denials in his Motion. Based upon the conclusory nature of the made by petitioner and the evidence obtained by the government, petitioner was not prejudiced by counsel's failure to raise a motion to suppress evidence. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (holding that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court").

**B. Deficient Representation**

When evaluating whether counsel's performance was deficient, the relevant inquiry is whether counsel's assistance was reasonable under the totality of the circumstances. See Strickland, 466 U.S. at 688. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decision, strategic choices must be respected . . . if they are based on professional judgment." Id. at 681. Additionally, the defendants bears the burden of proof when claiming ineffective assistance of counsel. See United States v. Cronic, 466 U.S. 648, 658 (1984).

Petitioner must establish that "counsel's representation fell below and objective standard of reasonableness . . . under prevailing professional norms." Kysor v. Price, 58 F. App'x 540, 542 (3d Cir. 2002) (citing Strickland, 466 U.S. at 687-688). Petitioner argues that his counsel was deficient because petitioner was sentenced to ten years' imprisonment, instead of "five to forty years'" imprisonment. (ECF No. 618 at 32, 35-37.) Petitioner, however, was sentenced to a statutory mandatory minimum term of imprisonment pursuant to 21 U.S.C. § 841 (a)(1), (b)(1)(a). Because petitioner's ten-year imprisonment term was statutorily required, counsel's

representation was not unreasonable.  See United States v. Ordaz, 111 F. App'x 128, 132-33 (3d Cir. 2004) (holding that petitioner failed to carry her burden in proving counsel's performance was deficient, when a statutory mandatory minimum term of imprisonment was involved); United States v. Evans, 178 F. App'x 806, 809-10 (10th Cir. 2006) (holding that petitioner's counsel was not deficient because there was a statutory mandatory minimum penalty and petitioner acknowledged that he was satisfied with counsel's performance and understood the mandatory terms of imprisonment).

Petitioner alleges no facts that would support a conclusion that his counsel's actions were unreasonable or deficient. Petitioner argues that his counsel failed to suppress evidence and further argues that his counsel failed to inform him about the aspects of the conspiracy.  (ECF No. 618 at 13, 20.)   At the change of plea hearing, when the court asked petitioner if he was "fully satisfied with the counsel, representation, and advice, given to [him] in this case by [his] attorney, Mr. Nightingale," petitioner responded "I am."  (ECF No. 656-1 at 6.)  Also, on two separate occasions, petitioner acknowledged that he understood that there was a statutory mandatory minimum term of imprisonment.  (Id. at 13-14; ECF No. 592 at 8-9.)  Based upon the evidence adduced by the government, and that a statutory mandatory minimum penalty applied in this case, petitioner's assertion that counsel was deficient is not persuasive.  Petitioner alleges that his conviction was "obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and consequences of the plea." (ECF NO. 617 at 3.)  The record does not support these arguments.  Petitioner stated under oath, at the change of plea hearing, that he had reviewed the charges against him and the elements of the charge. (ECF No. 656-1 at 16)  Petitioner stated that he understood he did not have to change his plea and that he understood the consequences of doing so.  (Id. at 19.)  After the court

extensively questioned the petitioner, the court determined that the petitioner knowingly and voluntarily entered his plea accepted the guilty plea.  (Id.)  Because the petitioner voluntarily changed his plea to guilty and stated that he was satisfied with his counsel, petitioner cannot now in a conclusory manner claim that his counsel was deficient.

## VII. Fair Sentencing Act

Petitioner argues that he is not subject to the ten-year statutory mandatory minimum term of imprisonment, and is "instead subject to the post-[Fair Sentencing Act] statutory penalty of five to forty years imprisonment. . . ."  (ECF NO. 618 at 31.)  The Fair Sentencing Act of 2010 ("FSA") reduced the disparity between criminal penalties for crack cocaine and powder cocaine. 21 U.S.C. § 841(b)(1)(A)(iii)[4].  Pursuant to the FSA, the quantity of crack cocaine required to trigger the ten-year minimum sentence is 280 grams.  21 U.S.C. § 841(b)(1)(A)(iii).  A court, however, may not reduce a term of imprisonment based on a subsequently lowered sentencing range, if the guidelines amendment "does not have the effect of lowering defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)."  U.S.S.G. § 1B1.10 cmt. 1(A).

Also, the FSA "has not been made retroactive by the Supreme Court to cases on collateral review".  United States v. McKeithan, No. 10-3981, 2011 WL 2210156 (3d Cir. 2011); see United States v. Patillo, 403 F. App'x 761, 767 (3d Cir. 2010) (unpublished opinion) ("[T]he Fair Sentencing Act . . . does not apply retroactively.")  Because FSA does not retroactively apply, the court is constrained to apply a mandatory minimum imprisonment term.  See United States v. Glover, No. 09-1725, 2010 WL 4250060, at *2 (2d Cir. 2010) (holding that the FSA does not

---

[4] "In case of a violation of subsection (a) of this section involving . . . 280 grams or more of a mixture or substance described in clause (ii) which contains a cocaine base; . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life…."  21 U.S.C. § 841(b)(1)(A)(iii).

retroactively apply, and consequently, the court was constrained to apply the mandatory minimum).

Petitioner pled guilty, on May 17, 2011, to conspiracy to distribute five kilograms or more of powder cocaine, (ECF No. 656-1) and was sentenced on September 27, 2011. (ECF No. 592.) The FSA became effective on August 3, 2010. The FSA, therefore, would have an effect on petitioner's sentence, if he was convicted of an offense concerning crack cocaine. See Dorsey v. United States, 132 S.Ct. 2321, 2326 (2012) (holding that the FSA applied to those "who committed a crack cocaine crime . . . [and] were not sentenced until after August 3.") Petitioner was not, however, convicted of any offense concerning crack cocaine. Section 841(b)(1)(a) imposes a statutory mandatory minimum term of imprisonment of ten years for powder cocaine offenses. Therefore, pursuant to U.S.S.G. § 1B1.10 cmt. 1(A), petitioner's guideline sentence is ten years and the FSA has no effect on petitioner's sentence.

## VIII. Court's Abuse of Discretion in Sentencing Petitioner

Petitioner argues that the court abused its discretion in sentencing him to 120 months' imprisonment. (ECF No. 618 at 26). Petitioner was convicted of violating 21 U.S.C. § 846. (ECF No. 592 at 4). Pursuant to 21 U.S.C. § 841 (a)(1), (b)(1)(a), petitioner was sentenced to a mandatory minimum term of imprisonment of ten years. According to the United States Sentencing Guidelines, the offense of possession with intent to distribute a total of five kilograms but not more than fifteen kilograms of powder cocaine calls for a base offense level of 32. U.S.S.G. § 2D1.1 (c) (4). The plea agreement stated that "[t]he parties stipulate that the type and quantity of controlled substance attributable to Arnold Jeffrey Sayles in this case . . . is at least 5 kilograms but less than 15 kilograms of cocaine." (ECF No. 661 at 4.) Based upon petitioner's criminal history score of zero, (ECF No. 592 at 5), his entry of a guilty plea, (Id. at

4), and the timeliness of his acceptance of his responsibility, (Id. at 5), petitioner's total offense level was lowered to 29. (Id.) Pursuant to U.S.S.G Chapter 5, Part A, a total offense level of 29 and a criminal history category of zero yields an advisory guideline range for imprisonment of 87 to 108 months in circumstances where a mandatory minimum sentence exceeding that range is not implicated.

Petitioner argues that the court abused its discretion because it sentenced him to 120 months' imprisonment, which is longer than the guideline range of 87 to 108 months. (ECF No. 618.) According to § 841 (b)(1)(a), however, a minimum term of imprisonment of ten years is mandatory. "Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b); United States v. Cordero, 313 F.3d 161, 165 (3d Cir. 2002). Because a statutory minimum term of imprisonment is required for petitioner's offense, the ten-year mandatory term of imprisonment was required and constituted the guidelines sentence for petitioner's offense. U.S.S.G. § 5G1.1(b). Contrary to petitioner's argument, his guidelines sentence is 120 months, not 87 to 108 months.

During the sentencing hearing, the court discussed the factors it considers in imposing a sentence, pursuant to 18 U.S.C. § 3553(a). (ECF No. 592 at 14-17.) The court discussed its reasons for imposing the sentence and concluded that the "sentence does address the goals of punishment, rehabilitation, and deterrence." (Id. at 17.) When a statutorily mandatory minimum penalty is required, the court does not have discretion to impose a lower sentence upon petitioner unless the defendant receives the benefit of a 18 U.S.C. § 3553(e)[5] motion, Federal Rules of

---

[5] "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial

Criminal Procedure Rule 35(b) motion[6], or qualifies for the safety valve pursuant to 18 U.S.C. §

3553(f)[7].  See United States v. Kellum, 356 F.3d 285, 289 (3d Cir. 2004) (holding that a district

court only has the authority to depart below mandatory minimum sentence pursuant to 18 U.S.C.

§ 3553(e), (f)); Melendez v. United States, 518 U.S. 120, 130 (holding that a district court has no

authority to impose a sentence below a statutory mandatory minimum when the government has

not made a motion pursuant to § 3553(e) or § 5K1.1).  Also, departures from the United States

---

assistance in the investigation or prosecution of another person who has committed an
offense...."  18 U.S.C. § 3553(e).

[6] "Upon the government's motion made within one year of sentencing, the court may reduce a
sentence if the defendant, after sentencing, provided substantial assistance in investigating or
prosecuting another person."  Fed. R. Crim. P. 35(b)(1).

[7]      Notwithstanding any other provision of law, in the case of an offense
        under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C.
        841, 844, 846) or section 1010 or 1013 of the Controlled Substances
        Import and Export Act (21 U.S.C. 960, 963), the court shall impose a
        sentence pursuant to guidelines promulgated by the United States Sentencing
        Commission under section 994 of title 28 without regard to any statutory
        minimum sentence, if the court finds at sentencing, after the Government has
        been afforded the opportunity to make a recommendation, that--
        **(1)** the defendant does not have more than 1 criminal history point, as determined
        under the sentencing guidelines;
        **(2)** the defendant did not use violence or credible threats of violence or possess a
        firearm or other dangerous weapon (or induce another participant to do so) in
        connection with the offense;
        **(3)** the offense did not result in death or serious bodily injury to any person;
        **(4)** the defendant was not an organizer, leader, manager, or supervisor of others in
        the offense, as determined under the sentencing guidelines and was not engaged
        in a continuing criminal enterprise, as defined in section 408 of the Controlled
        Substances Act; and
        **(5)** not later than the time of the sentencing hearing, the defendant has truthfully
        provided to the Government all information and evidence the defendant has
        concerning the offense or offenses that were part of the same course of conduct or
        of a common scheme or plan, but the fact that the defendant has no relevant or
        useful other information to provide or that the Government is already aware of the
        information shall not preclude a determination by the court that the defendant has
        complied with this requirement.

18 U.S.C. § 3553(f).

Sentencing guidelines are authorized if the government files a motion pursuant to U.S.S.G. § 5k1.1 for substantial assistance provided to the government.  See United States v. Ast, 53 F. App'x 183, 184 (3d Cir. 2002) ("Sentencing reductions below the Sentencing Guidelines range are governed by U.S.S.G. § 5K1.1, which similarly provides that 'substantial assistance' in the prosecution of another offender may be the basis for the prosecutor to move for a sentence below the minimum Guidelines sentence.").

In this case, the court does not have the discretion to go below the statutory mandatory minimum penalty of 120 months' imprisonment because the government did not file a motion to reduce the sentence—either before or after the sentence was imposed—and there was no allegation of the petitioner providing substantial assistance.  (ECF No. 618; ECF No. 656.) Additionally, § 3553(f) was not applicable to petitioner.  (ECF No. 592.)  The mandatory minimum sentence was the guideline sentence pursuant to U.S.S.G. § 5G1.1(b).  Petitioner's sentence was, therefore, reasonable and the court did not abuse its discretion in imposing a sentence of 120 months of imprisonment, followed by a term of supervised release of five years.

## IX.  Need for Evidentiary Hearing

For the reasons set forth herein, and based upon petitioner's motion and the files and records of the case, the court concludes that petitioner's motion shall be denied without a hearing because the motion and files and records of the case show conclusively that petitioner is not entitled to the relief he seeks.

## X.  Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a Certificate of Appealability ("COA") should be issued or the clerk of court for the court of appeals shall remand the case to the district court for a prompt

determination as to whether a certificate should issue.  <u>See</u> 3rd Cir. L.A.R. 22.2.  Based upon the

motion and files and records of the case, and for the reasons set forth herein, this court finds that

petitioner did not show a substantial denial of a constitutional right.  Therefore a COA should not

issue.

**XI. Order**

        An appropriate order will be entered.

                                                    By the court,

                                                    <u>/s/JOY FLOWERS CONTI</u>
                                                    Joy Flowers Conti
                                                    Chief United States District Judge

Dated:  August 27, 2013

cc:     Arnold Jeffrey Sayles
        Reg. No. 30483-068
        USP Hazelton-Camp
        P.O. Box 2000
        Bruceton Mills, WV 26525